1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  RUBEN FIGUEROA, | Case No.  1:22-cv-00916-BAM (PC) |
| 12                  Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO |
| 13       v. | ACTION |
| 14  CLARK, *et al.*, | FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR |
| 15                  Defendants. | FAILURE TO STATE A CLAIM, FAILURE TO OBEY COURT ORDER, AND FAILURE |
| 16 | TO PROSECUTE |
| 17 | (ECF Nos. 5, 7, 9) |
| 18 | **FOURTEEN (14) DAY DEADLINE** |

19

20  I.     **Background**

21        Plaintiff Ruben Figueroa ("Plaintiff") is a former state prisoner proceeding *pro se* and *in*

22  *forma pauperis* in this civil rights action under 42 U.S.C. § 1983.

23        On August 25, 2022, the Court issued a screening order granting Plaintiff leave to file a

24  first amended complaint or a notice of voluntary dismissal within thirty (30) days.  (ECF No. 5.)

25  The Court expressly warned Plaintiff that the failure to comply with the Court's order would

26  result in a recommendation for dismissal of this action, with prejudice, for failure to obey a court

27  order and for failure to state a claim.  (*Id.* at 21.)  Following two extensions of time, Plaintiff's

28  first amended complaint or notice of voluntary dismissal was due on or before December 27,

2022.  (ECF Nos. 7, 9.)  The deadline has expired, and Plaintiff has failed to file an amended complaint or otherwise communicate with the Court.

**II.**   **Failure to State a Claim**

     **A.**   **Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

     **B.**   **Plaintiff's Allegations**

Plaintiff is currently out of custody.  The events in the complaint are alleged to have occurred while Plaintiff was housed at California State Prison in Corcoran, California ("Corcoran").  Plaintiff names the following defendants: (1) Ken Clark, Warden; (2) Paul Silva, Head Supervisor of Corcoran Prison Industry Authority for Diary Milk Processing Plant ("PIA-Dairy"); (3) John Doe, "main boss" at PIA-Dairy; (4) "Pedro" John Doe, assistant main boss at

the PTA-Dairy; (5) John Doe, white male, new assistant head boss; (6) John Doe, Facility 3C doctor for Corcoran; (7) Prison Industry Authority Dairy Milk Plant, unknown entity; (8) Susan Doherty, Facility 3C registered nurse; (9) Linda Ortega, Facility 3C registered nurse; and (10) Adrian Jaques, Facility 3C LVN nurse.  The individuals are sued in their individual capacities, and the Prison Industry Authority Dairy Milk Plant is sued in its individual and official capacities.

Plaintiff alleges hazardous and unsafe working prison conditions and denial of medical care in violation of the Eighth Amendment and the Fourteenth Amendment.[1]  Plaintiff alleges as follows:

From June 2019 forward, Plaintiff got a job working at the PTA-Dairy milk processing plant at Corcoran.  After working for a few months, from February 2020 through July 2022 [sic], Plaintiff gave notice to supervisors Joe[2] and Pedro that the air pump machine was broken and did not have a gasket on the lid.  The air pump machine is used to spray disinfectant all over the work area, walls, floors, celling, milk tanks, etc.  When in operation, hazardous chemical would splash and spray hazardous chemicals in a 25–30 foot radius.  Supervisors Joe and Pedro both instructed workers to continue to use the broken machine until replaced.  This was deliberate indifference to workers health and safety.  On July 22, 2020, supervisors ordered Plaintiff to continue to use the malfunctioning air pump machine.  Plaintiff was spraying the chemical foam (disinfectant) on each pallet he was working on.  The air machine lid was splashing, spewing hazardous chemicals all over and around Plaintiff.  Plaintiff did not realize at the time, but hazardous chemical had gotten on his chin/face area, causing chemical burns to appear.  When Plaintiff realized the chemical burns were not rashes, he notified his supervisor Joe of the burns and Joe said he would document the incident on necessary forms.

///

---

[1] Plaintiff is a convicted state inmate housed in a state prison facility.  Therefore, the appropriate legal standard for Plaintiff's claims is the Eighth Amendment.  The Supreme Court has emphasized that the Eighth Amendment's cruel and unusual punishments clause is the appropriate mechanism for raising claims that challenge inhumane or unsafe conditions of confinement.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

[2] It is unclear who "Joe" is because Plaintiff has not named a "Joe" defendant.

On September 2, 2020, while working at PIA dairy processing plant, Plaintiff told the new supervisor, John Doe that Plaintiff needed long protective gloves and protective gear to protect from further chemical burns.  These gloves are seldom available, and Plaintiff used his own gloves for long periods of time.  At times, the only gloves available were for both left-handed or both right-handed "thereby subjecting Plaintiff and coworkers to health and safety concerns and cruel and unusual work conditions."

On February 24, 2021, Plaintiff was working at the PIA-Dairy processing plant.  As he was dumping trash into a commercial metal dumpster, Plaintiff had his left hand on top of the metal bin where the hinge was located.  Plaintiff leaned down to grab the trash and the trash hit the lid making the lid fall, smashing, squeezing Plaintiff left-hand index finger and either breaking or spraining the finger.  The nail came off and it is disfigured and looks horrible.  At the same time as the lid smashed Plaintiff's fingers, a wooden pallet which was on top of the trash can and leaning against the container fell on Plaintiff's left shoulder/arm creating a small purple bruise.  The impact caused serious arm/shoulder pain which still hurts.  Plaintiff has not been taken seriously for his injuries.

On February 10, 19, and 26, 2021, the air machine which disinfects pallets was still leaking and spraying foam everywhere.  It sprayed Plaintiff on both forearms and neck, burning his skin, although these burns were not as severe as the ones to his chin.  By this time, several other workers had complained about the hazardous working condition of the still broken air machine.  It was used daily and would blow out hazardous chemicals.

From March 2, 2021, through the last day of Plaintiff's work on July 21, 2021,[3] Plaintiff was instructed to continue to clean and disinfect the pallets using the same broken air machine.  The machine was missing a rubber gasket around the seal.  Plaintiff and others continued to inform PIA-Dairy supervisors of the broke air machine.  Supervisors instructed to continue with their work and did not ensure safety goggles and other protective gear were worn.  Instead, Plaintiff and his coworkers were replaced by workers from another yard/facility.

---

[3] The Court notes that the ending dates of Plaintiff's employment are referred to in the allegations as both in 2021 and 2022.

The "entity" was responsible for ensuring the health and safety and well-being of Plaintiff and the employees, yet there were no safety meetings or training on working with hazardous chemicals at the PIA-Dairy milk processing plant.

At no time during the time Plaintiff worked for PIA-Dairy milk processing did Defendants Paul Silva, Paul's son-in-law, Joe (last name unknown),[4] Pedro (last name unknown) and John Doe (supervisors) ever intervene to prevent workers from using the broken air foam disinfecting machine.  Instead these supervisors ordered inmate workers to continue to use the broken air foam disinfecting machine, despite missing the rubber seal/gasket and splashing hazardous chemicals in a 20–30 foot radius.

Defendants Ken Clark, Paul Silva, Paul's son-in-law, Joe (last name unknown), Pedro (last name unknown) and John Doe (supervisors) each failed for months to remove the broken air foam disinfecting machine, and having full knowledge the machine was broken prior to Plaintiff starting to work at PIA-Dairy.  They continued to order workers to use the broken machinery. Each defendant, Defendants Paul Silva, Paul's son-in-law, Joe (last name unknown), Pedro (last name unknown), and John Doe (supervisors), failed to fill out appropriate work accidents forms on each of the accident days, violating Due Process and not allowing for works compensation.

Plaintiff also alleges denial of medical care.  Following the incident on July 21, 2020, Plaintiff requested to be seen for the chemical burns on his face/chin.  Defendant Susan Doherty did not take the visit seriously because PIA-Diary did not attempt to assist Plaintiff in receiving adequate medical care.  On July 27, 2020, Defendant Susan Doherty did not know what the rash was caused from, and Plaintiff explained that shaving around it irritated the area.  Defendant's only medical treatment was to tell Plaintiff not to shave in that area for a few days and issued antibiotic cream since the burn was dark purple with pus on the outer skin.  No other treatment was provided.

Plaintiff submitted several medical 7362s about chemical burns occurring at work. Plaintiff's skin was not healing with the antibiotics nurse Susan Doherty issued.  On September 2,

---

[4] It is unclear who the individuals "Paul's son-in-law" or "Joe (last name unknown)," are because these persons are not named as defendants.

2020, Defendant Susan Doherty stated that the burns appeared to be healing. Plaintiff requested to see a doctor, or dermatologist and skin specialist. Yet, Defendant said that would not occur because it was not an emergency.

After the February 24, 2021 accident and injuries on his index finger and nail and left shoulder, Plaintiff submitted several 7362 medical forms explaining what happened. He stated that his fingers are dislocated or broke and wanted an x-ray. Plaintiff at no time ever received an x-ray. Plaintiff was seen on March 1, 2021 by Defendant Linda Ortega regarding cleaning up wounds so that they would not get infected and asked if Plaintiff had a tetanus shot. Plaintiff requested x-rays for his fingers, but nothing was done by Defendant like referring him to a doctor or for x-rays.

On July 8, 2021, Plaintiff submitted medical slips 7362s indicating that his left index finger was crooked, and his left arm was weaker due to the pallet hitting his left shoulder. Nothing was done. On July 19, 2021, Plaintiff was scheduled for physical therapy but was left in constant pain ever since accident occurred. On February 24, 2021, after Plaintiff had the work accident, he was sent to the medical office for his injuries. He was bleeding profusely, and Plaintiff's left index fingernail was popping up and detached. Defendant Linda Ortega only washed off the blood on hands and fingers. Nothing more was done. Plaintiff said that his fingers were either broken, sprained, or dislocated and requested X-rays. Defendant Ortega failed to refer Plaintiff to a doctor or obtain an x-ray.

When Plaintiff saw medical, he told each medical defendant of his medical condition such as extreme pain, lack of shoulder arm movement, not receiving x-rays. Neither Defendant Linda Ortega, Susan Doherty nor supervisor Doctor John Doe ever responded reasonably to Plaintiff's need for medical care. They did not refer Plaintiff to see a medical doctor or for x-rays. Defendant Linda Ortega, Susan Doherty, supervisor Doctor John Doe, and Adrian Jaques failed to provide x-rays, follow up treatment, and initial emergency care after each accident physical treatment.

The CDCR health care system and Policy under Title 15 is inadequate and ineffective. At no time after the accident did Defendants x-ray Plaintiff's finger or left shoulder/arm to verify the

6

1  injuries.  From February 24, 2021 to February 17, 2022, Plaintiff was in pain from his left

2  shoulder.  Plaintiff got treated solely because he was transferred to another institution.

3      Plaintiff saw Defendant Adrian Jaques who "ignored" Plaintiff and prescribed ibuprofen

4  for alleviation of pain and use of capsaicin cream for chemical burns.

5      PIA-Dairy supervisors act with deliberate indifference or reckless disregard to safety by

6  "failing to act" reasonably in response to danger.  PIA Dairy supervisors Paul Silva, Joe

7  (unknown last name), Pedro (unknown last name) and John Doe had plenty of time and an

8  opportunity to get a seal gasket for the broken air foam machine, yet failed to take appropriate

9  measures to abate the risk of harm.

10      Plaintiff alleges an Eighth Amendment violation by Ken Clark, Paul Silva, Joe (last name

11  unknown), Pedro (last name unknown), John Doe (white supervisor) by continuously subjecting

12  Plaintiff to unsafe, unhealthy, dangerous work conditions by making Plaintiff continue to use a

13  broken air foam machine missing its rubber plastics gasket.  They knew it was broken for 17

14  months.

15      Plaintiff alleges an Eighth Amendment violation by Doctor John Doe, Susan Doherty,

16  Linda Ortega and Adrian Jaques by depriving Plaintiff of a right to adequate medical healthcare.

17      Plaintiff alleges that the entity of the PIA-Dairy milk processing plant at Corcoran failed

18  to adequately supervise all PIA-Diary supervisors named as defendants.  The PIA-Dairy entity

19  trains, hires, oversees, gives orders and allowed broken machinery which repeatedly hurt Plaintiff

20  and continued to be used, even though supervisors knew the machinery was broken.  The

21  entity/owners failed to properly train to use the hazardous chemicals and broken foam air

22  machine.  The February 24, 2021 accident should not have occurred because the trash bin should

23  have been completely open and not had a big metal storage bin and the pallet which fell should

24  not have been left leaning on the storage bin.

25      Plaintiff alleges his equal protection rights under the Fourteenth Amendment were

26  violated by having Plaintiff work in an unsafe, unhealthy and dangerous work conditions.

27  Plaintiff also alleges that his Fourteenth Amendment rights were violated by the medical care he

28  was provided.

1    As remedies, Plaintiff seeks declaratory relief and compensatory and punitive damages.

2    **C.    Discussion**

3    Plaintiff's complaint fails to comply with Federal Rule of Civil Procedure 8 and fails to

4    state a cognizable claim under 42 U.S.C. § 1983.

5    **1.    Federal Rule of Civil Procedure 8**

6    Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain

7    statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

8    Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause

9    of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678

10   (citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a

11   claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S.

12   at 570).  While factual allegations are accepted as true, legal conclusions are not.  *Id.*; *see also*

13   *Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

14   Here, Plaintiff's complaint is not short.  It is not a plain statement of his claims showing

15   that he is entitled to relief.  Plaintiff's allegations are conclusory and do not state what happened,

16   when it happened, or which defendant was involved.  General assertions regarding who knew of

17   Plaintiff's working conditions are not sufficient, and Plaintiff may not merely state the elements

18   of a cause of action without providing any factual allegations in support of his claims.  Plaintiff

19   should state his key factual allegations as to each defendant.  For instance, Plaintiff must allege

20   who he told what and when regarding the air foam machine and what care he was provided for his

21   injuries.  His allegations that "nothing was done" for medical care are insufficient because he also

22   alleges that some kind of care was provided.

23   **2.    Supervisory Liability**

24   To the extent Plaintiff seeks to hold any defendant liable based solely upon their

25   supervisory role, he may not do so.  Liability may not be imposed on supervisory personnel for

26   the actions or omissions of their subordinates under the theory of respondeat superior.  *Iqbal*, 556

27   U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.,* 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v.*

28   *City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th

1    Cir. 2002).  "A supervisor may be liable only if (1) he or she is personally involved in the

2    constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's

3    wrongful conduct and the constitutional violation."  *Crowley v. Bannister*, 734 F.3d 967, 977 (9th

4    Cir. 2013) (citation and quotation marks omitted); accord *Lemire v. Cal. Dep't of Corrs. &*

5    *Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915–16

6    (9th Cir. 2012) (en banc).  "Under the latter theory, supervisory liability exists even without overt

7    personal participation in the offensive act if supervisory officials implement a policy so deficient

8    that the policy itself is a repudiation of constitutional rights and is the moving force of a

9    constitutional violation."  *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646

10   (9th Cir. 1989)) (internal quotation marks omitted).

11         Plaintiff seeks to hold Ken Clark, Paul Silva, Paul's son in law, Joe (last name unknown),

12   Pedro (last name unknown), and John Doe (supervisors), responsible for Plaintiff's injuries from

13   the foam air machine.  Plaintiff alleges that each defendant "knew" that the foam air machine was

14   broken, Plaintiff has failed to allege direct participation of these defendants in the alleged

15   violations.  Plaintiff is attempting to allege that Ken Clark, Paul Silva, Paul's son-in-law, Joe (last

16   name unknown), Pedro (last name unknown), and John Doe (supervisors) participated in or

17   directed the violations, or knew of the violations and failed to act to prevent them.  Plaintiff

18   alleges that the warden "knew" or "should have known" or "absolutely knew" about conditions.

19   Plaintiff merely relies on these supervising Defendants' responsibilities to ensure the safety and

20   health of the prisoners, but this claim is based on respondeat superior which is not cognizable

21   under section 1983.  *Iqbal*, 556 U.S. at 677.  Such conclusory allegations are insufficient to state

22   the causal link between such defendant and the claimed constitutional violation.

23         To prove liability for an action or policy, the plaintiff "must . . . demonstrate that his

24   deprivation resulted from an official policy or custom established by a . . . policymaker possessed

25   with final authority to establish that policy."  *Waggy v. Spokane Cty. Wash.*, 594 F.3d 707, 713

26   (9th Cir. 2010).  When a defendant holds a supervisory position, the causal link between such

27   defendant and the claimed constitutional violation must be specifically alleged.  *See Fayle v.*

28   *Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir.

1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient.  *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  In addition, it is unclear what the policy is that is purportedly at issue.  Plaintiff's conclusory statements are insufficient to state a cognizable claim against the supervisory defendants.  Plaintiff has failed to "demonstrate that his deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy."

Plaintiff mentions that supervisors should have trained differently or better.  A "failure to train" theory can be the basis for a supervisor's liability under § 1983 in only limited circumstances, such as where the failure amounts to deliberate indifference.  *See City of Canton v. Harris*, 489 U.S. 378, 387–90 (1989).  To establish a failure to train claim, a plaintiff must show that " 'in light of the duties assigned to specific officers or employees, the need for more or different training [was] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need.' "  *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting *Canton*, 489 U.S. at 390).  Plaintiff has not alleged facts demonstrating that any defendant was deliberately indifferent to a need for more or different training.

### 3.    Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's

10

affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff must link each named defendant. Plaintiff names the defendants but then uses different terminology to refer to these purported defendants. In addition, Plaintiff must allege factual support for each defendant. Defendants are entitled to know the conduct they are alleged to have engaged in which violated Plaintiff's rights. Fed. R. Civ. P. 8.

### 4.     Federal Rules of Civil Procedure 18 and 20

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Mackey v. Price*, 2020 WL 7319420, at *3–4 (E.D. Cal. Dec. 11, 2020), report and recommendation adopted, 2021 WL 843462 (E.D. Cal. Mar. 5, 2021). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement refers to similarity in the factual background of a claim. *Id.* at 1349. Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not raise different claims against different defendants in a single action. For instance, Plaintiff may not state unrelated claims of his injury from the chemical burns/medical care with other claims for injury to his fingers/medical care or denial of gloves. The injuries from the chemical burns and the injury to his fingers are separate incidents. Unrelated claims involving multiple defendants belong in different suits. Merely because Plaintiff was working at the same job does not make every injury or incident related.

### 5.     Eleventh Amendment Immunity

Plaintiff brings suit against the "entity" of the Prison Industry Authority and the "owners" of the Prison Industry Authority.

///

The Prison Industry Authority, or "PIA," is an agency within the California Department of Corrections and Rehabilitation which, among other things, operates work programs for prisoners. *See* Cal. Penal Code §§ 2800–2801; *Burleson v. California*, 83 F.3d 311, 312–13 (9th Cir. 1996) (describing origins of PIA); *Jefferson v. Hollingsworth*, No. 3:17-CV-1099-BEN-BGS, 2017 WL 3396516, at *3 (S.D. Cal. Aug. 4, 2017).  The PIA is by statute a part of the CDC, now the California Department of Corrections and Rehabilitation ("CDCR").  *Burleson*, 83 F.3d at 312–13; Cal. Penal Code § 2800 ("Commencing July 1, 2005, there is hereby continued in existence within the Department of Corrections and Rehabilitation the Prison Industry Authority.").  The PIA's status as a part of the California correctional system brings it within the ambit of "prison-structured programs." *Burleson*, 83 F.3d at 314.

Claims for damages against the state, its agencies, or its officers for actions performed in their official capacities are barred under the Eleventh Amendment, unless the state waives its immunity.  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (Eleventh Amendment bars a damages action against a State in federal court); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override. . . ." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999).  Suits for injunctive relief are also generally barred.  *See Nat'l Audubon Soc'y v. Davis,* 307 F.3d 835, 847 (9th Cir. 2002); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear . . . that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").  Plaintiff cannot state a claim against the State of California or its officers in their official capacities.

### 6.   Eighth Amendment

#### a.   *Deliberate Indifference to Safety*

Plaintiff contends that the air pump machine was a known danger to the individuals working in the PIA Dairy yet the supervisors never had it fixed.  Plaintiff was injured.

///

1        The Eighth Amendment requires that prison officials take reasonable measures to
2   guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. at 832.  In particular, prison
3   officials have a duty to protect prisoners from violence at the hands of other prisoners.  *Id.* at 833;
4   *Cortez v. Skol*, 776 F. 3d 1046, 1050 (9th Cir. 2015); *Hearns v. Terhune*, 413 F.3d 1036, 1040
5   (9th Cir. 2005); *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982); *Gillespie v. Civiletti*, 629
6   F.2d 637, 642 & n.3 (9th Cir. 1980).

7        The failure of prison officials to protect inmates from attacks by other inmates or from
8   dangerous conditions at the prison violates the Eighth Amendment when two requirements are
9   met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is,
10   subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834.  A
11   prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate
12   health or safety by failing to take reasonable steps to abate it. *Id.* at 837.

13        The facts must show that defendants' failure to fix the danger caused plaintiff's injury.
14   *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the
15   deprivation of a constitutional right if he does an act, participates in another's act or omits to
16   perform an act he is legally required to do that causes the alleged deprivation).  Failure to
17   remediate following plaintiff's injury does not support liability, because that cannot have caused
18   plaintiff's injury.  Also, no defendant can be liable for an unsafe condition on the basis of his or
19   her general supervisory or administrative responsibilities, as there is no respondeat superior
20   liability under § 1983. *See Iqbal*, 556 U.S at 676; *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir.
21   2011).

22        The claims against some defendants appear to be based on failure to correct dangerous
23   conditions after Plaintiff's injury on July 22, 2020.  Failure to correct a dangerous condition only
24   supports an Eighth Amendment claim if it caused plaintiff's particular injury. *See generally,*
25   *Rizzo v. Goode*, 423 U.S. 362 (1976) (§ 1983 defendant liable only for harms caused by his own
26   actions).  Plaintiff did not allege that he informed his supervisors of the malfunctioning machine
27   before he was injured (or say who he told and what he said), and he did not amend his complaint
28   to clarify his allegations.

i.     Malfunctioning Air Pump Machine

Plaintiff alleges that he told Supervisor Joe and Pedro that the air pump machine was broken, without the proper gasket, which was causing Plaintiff to be sprayed by hazardous chemicals.  On July 22, 2020, they instructed Plaintiff to continue to use the air pump machine. Plaintiff received chemical burns.  Plaintiff does not allege that after he told supervisor Joe about the burns that supervisor Joe required that Plaintiff continue to use the broken air pump machine.

Plaintiff alleges that on September 2, 2020, he told new supervisor John Doe that Plaintiff needed gloves to use to protect from further chemical burns.  Plaintiff complains that the gloves were either right or left-handed, and not both.  But Plaintiff fails to allege what happened and whether he was injured.

Plaintiff alleges that he was sprayed with the air foam machine on February 10, 19, and 26, 2021, and other dates in March–July, and was injured.  But he fails to allege that any prison official is deliberately indifferent because he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it.  He does not allege who instructed him to use the machine on those dates and how that person knew it placed Plaintiff at risk of safety.  Conclusory allegations that a supervisor "has full knowledge" of the potential harm are insufficient.

ii.     February 24, 2021 Trash Bin/Pallet Falling Incident

Plaintiff complains that on February 24, 2021, when he was putting trash in the bin, the lid slammed on his fingers and a pallet that had been leaning on the lid smashed onto his shoulder.

Plaintiff fails to state a cognizable claim for this incident.  There are no facts that the condition was deliberately set to harm Plaintiff or that any defendant knew of the condition of the trash bin.  Plaintiff injured himself when he was putting trash in the trash bin, when the lid accidently fell on his fingers.  There are no facts that any defendant was responsible for the lid falling on Plaintiff's fingers or responsible for the pallet being on the bin.  At most, there may be the possibility of negligence for the accidental injury to Plaintiff.  Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual

1  Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986)

2                    b.      *Deliberate Indifference to Medical Care*

3          Plaintiff alleges a claim for deliberate indifference to a serious medical need.

4          To allege a claim of deliberate indifference, plaintiff must show he had a serious medical

5  need and defendants were deliberately indifferent to that need.  A medical need is serious "if the

6  failure to treat the prisoner's condition could result in further significant injury or the

7  'unnecessary and wanton infliction of pain.' "  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.

8  1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)

9  (en banc).  Indications of a serious medical need include "the presence of a medical condition that

10  significantly affects an individual's daily activities." *Id.* at 1059–60.  By establishing the

11  existence of a serious medical need, a prisoner satisfies the objective requirement for proving an

12  Eighth Amendment violation.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

13          Deliberate indifference is established only where the defendant subjectively "knows of

14  and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051,

15  1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted).

16  Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond

17  to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v.*

18  *Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).  Civil recklessness (failure "to act

19  in the face of an unjustifiably high risk of harm that is either known or so obvious that it should

20  be known") is insufficient to establish an Eighth Amendment violation.  *Farmer v. Brennan*, 511

21  U.S. 825, 836–37 & n.5 (1994) (citations omitted).

22          A difference of opinion between an inmate and prison medical personnel—or between

23  medical professionals—regarding appropriate medical diagnosis and treatment is not enough to

24  establish a deliberate indifference claim.  *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989);

25  *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).  Additionally, "a complaint that a

26  physician has been negligent in diagnosing or treating a medical condition does not state a valid

27  claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not

28  become a constitutional violation merely because the victim is a prisoner. " *Estelle*, 429 U.S. at

106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.,* 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Plaintiff fails to state a cognizable claim. Plaintiff alleges that Defendant Susan Doherty did not know what caused his rash on July 27, 2020, and she only gave him antibiotic cream. Plaintiff later discovered the chemical burns. Plaintiff's allegations fail to show Defendant Doherty's indifference. Plaintiff alleges Doherty did not know what the condition was, but she provided some topical antibiotic cream for the rash.

Plaintiff alleges that he saw Defendant Doherty on September 2 and while he wanted to see a doctor, Defendant Doherty thought the burns were healing. A difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff alleges that when he injured his fingers on February 24, 2021, he went to medical with bloody fingers and related injuries. He saw Defendant Linda Ortega who only washed off the blood. She refused to refer Plaintiff to a doctor or to get an x-ray. As currently alleged, Plaintiff fails to state a cognizable claim. Plaintiff was provided care, and a difference of opinion as to whether he needed a doctor or x-rays does not state a cognizable claim. This claim is also improperly joined.

Plaintiff alleges he saw Defendant Adrian Jaques for his shoulder pain, who "ignored" Plaintiff. However, Defendant Jaques gave Plaintiff pain medication and cream. Plaintiff was

provided care, and a difference of opinion as to whether he needed a doctor or x-rays does not

state a cognizable claim.  This claim is also improperly joined.

Further, Plaintiff alleges that when Plaintiff saw "medical," he told each medical

defendant of his medical condition such as extreme pain, lack of shoulder arm movement, and not

receiving x-rays.  Plaintiff fails to state a cognizable claim based on the conclusory allegations.

Plaintiff must state factual support as to the identity of each defendant and what that defendant

did or did not do.  Plaintiff must allege the extent of the care he was provided.  Plaintiff is

reminded that a difference of opinion as to whether he needed a doctor or x-rays does not state a

cognizable claim.

### 7.    Equal Protection

The Equal Protection Clause requires the State to treat all similarly situated people

equally.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  This does not

mean, however, that all prisoners must receive identical treatment and resources.  *See Cruz v.

Beto*, 405 U.S. 319, 322 n.2 (1972); *Ward v. Walsh*, 1 F.3d 873, 880 (9th Cir. 1993); *Allen v.

Toombs*, 827 F.2d 563, 568–69 (9th Cir. 1987).

"To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts

plausibly showing that " 'the defendants acted with an intent or purpose to discriminate against

[them] based upon membership in a protected class,' " (citing *Thornton v. City of St. Helens*, 425

F.3d 1158, 1166 (9th Cir. 2005)) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir.

2001)), or that similarly situated individuals were intentionally treated differently without a

rational relationship to a legitimate state purpose, *Engquist v. Oregon Dep't of Agr.*, 553 U.S.

591, 601–02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lazy Y Ranch

Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *North Pacifica LLC v. City of Pacifica*, 526

F.3d 478, 486 (9th Cir. 2008).

Plaintiff has not stated a cognizable equal protection claim.  Plaintiff does not allege that

he was discriminated against because of his membership in any protected class.  He also does not

allege factual support that he was intentionally treated differently than other similarly situated

inmates without a rational relationship to a legitimate state purpose.  Plaintiff has not provided

17

any factual support for this claim.  *Fletcher v. Clendenin*, No. 1:22-CV-00249-AWI-BAM (PC), 2022 WL 2791480, at *5 (E.D. Cal. July 15, 2022) (Equal Protection claim dismissed for failure to allege factual support for denial of treatment based on membership in a protected class).

### 8.      Title 15 and Policy Violation

To the extent that Defendant has not complied with applicable state statutes or prison regulations for disclosure of information, these deprivations do not support a claim under § 1983. Section 1983 only provides a cause of action for the deprivation of federally protected rights. *See, e.g.*, *Nible v. Fink*, 828 Fed. Appx. 463 (9th Cir. 2020) (violations of Title 15 of the California Code of Regulations do not create private right of action); *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *11–12 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred."); *Parra v. Hernandez*, No. 08cv0191-H (CAB), 2009 WL 3818376, at *3 (S.D. Cal. Nov. 13, 2009) (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of the California Code of Regulations); *Chappell v. Newbarth*, No. 1:06-cv-01378-OWW-WMW (PC), 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations).

### 9.      Declaratory Relief

To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary.  "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest."  *Eccles v. Peoples Bank of Lakewood Vill.*, 333 U.S. 426, 431 (1948).  "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties."  *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).  If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated.  Accordingly, a declaration that any defendant violated Plaintiff's rights is

18

1    unnecessary.

2                           **10.    State Law Claims**

3           Plaintiff may be attempting to allege state law claims against Defendants.  "California's

4    Government Claims Act requires that a tort claim against a [state] public entity or its employees

5    for money or damages be presented to the California Victim Compensation and Government

6    Claims Board . . . no more than six months after the cause of action accrues."  *Lopez v. Cate*, No.

7    1:10-cv-01773-AWI, 2015 WL 1293450, at *13 (E.D. Cal. 2015) (citing Cal. Gov't Code

8    §§ 905.2, 910, 911.2, 945.4, 950–950.2).  Such compliance must be affirmatively alleged.

9    "Timely claim presentation is not merely a procedural requirement, but is . . . a condition

10   precedent to plaintiff's maintaining an action against defendant and thus an element of the

11   plaintiff's cause of action."  *Id.* (internal quotation marks and citations omitted).  The "obligation

12   to comply with the Government Claims Act" is independent of the obligation to exhaust

13   administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA").  *McPherson v.*

14   *Alamo*, No. 3:15-cv-03145-EMC, 2016 WL 7157634, at *6 (N.D. Cal. 2016) (citing *Parthemore*

15   *v. Col*, 221 Cal. App. 4th 1372, 1376 (2013)).

16          Plaintiff does not allege that he presented a claim to the California Government Claims

17   Program (the successor to the Victim Compensation and Government Claims Board) within six

18   months of the incidents underlying this action.  Thus, Plaintiff's state law claims, to the extent he

19   raises any, are not cognizable.  *Pradia v. Becerra*, No. 1:20-CV-01348 JLT (PC), 2021 WL

20   1839613, at *4 (E.D. Cal. May 7, 2021); *see Harris v. Escamilla*, 736 F. App'x 618, 621 (9th Cir.

21   2018) (affirming dismissal of state-law claim because plaintiff did "not allege[ ] that he submitted

22   an administrative claim before bringing . . . lawsuit, as required by the Government Claims Act")

23   (citation omitted).

24                          **11.    Workers' Compensation**

25          The allegations are unclear about Plaintiff's claim for workers' compensation.

26          California's Workers' Compensation Act grants the Workers' Compensation Appeals

27   Board exclusive authority to hear claims "[f]or the recovery of [workers'] compensation, or

28   concerning any right or liability arising out of or incidental thereto."  Cal. Labor Code § 5300(a);

1   *see also U.S. Fid. & Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1134 (9th Cir. 2011).  The

2   statute establishes "exclusive jurisdiction within the workers' compensation system for 'all

3   disputes over coverage and payment.' "  *Mitchell v. Scott Wetzel Servs., Inc.*, 227 Cal. App. 3d

4   1474, 1480 (1991) (quoting *Marsh v. McLennan, Inc.*, 49 Cal 3d 1, 7–8 (1989)).  For this reason,

5   other district courts in California have refused to entertain claims involving worker's

6   compensation benefits, brought by inmate workers who have been injured in prison.  *See*

7   *Rodriguez v. State Comp. Ins. Fund*, No. 05-cv-2600 LKK GGH, 2006 WL 8458934, at *3 (E.D.

8   Cal. Jan. 9, 2006) ("The mere denial of workman's compensation by the State Insurance

9   Compensation Fund does not present a federal question."); *Ledesma v. Cal. Rehab. Ctr.*, No. 15-

10  cv-2638 FMO JPR, 2016 WL 1165920, at *3 (C.D. Cal. Feb. 16, 2016), report and

11  recommendation adopted, 2016 WL 1170885 (C.D. Cal. Mar. 24, 2016); *Montgomery v. Cal.*

12  *Worker's Comp. Appeals Bd.*, No. 10-cv-3076 CL, 2011 WL 2470080, at *3 (D. Or. May 9,

13  2011), report and recommendation adopted, 2011 WL 2462938 (D. Or. June 20, 2011).  As the

14  magistrate judge explained in Montgomery, "[r]egardless of the label placed on plaintiff's

15  claims . . . [their] gravamen . . . relate to denial of worker's compensation benefits which plaintiff

16  believes are due him" and thus they "are barred by the exclusive remedy provided by the

17  California workers' compensation system."  *Id*. (citations omitted).  Because exclusive

18  jurisdiction is vested in the California workers' compensation system, this Court lacks jurisdiction

19  over plaintiff's worker's compensation claims.

### 12.   Doe Defendants

21       Plaintiff names several doe defendants.  "As a general rule, the use of 'John Doe' to

22  identify a defendant is not favored."  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

23  Plaintiff is advised that John Doe or Jane Doe defendants (i.e., unknown defendants) cannot be

24  served by the United States Marshal until Plaintiff has identified them as actual individuals and

25  amended his complaint to substitute names for John Doe or Jane Doe.

26  ///

27  ///

28  ///

1    **III.   Failure to Prosecute and Failure to Obey a Court Order**

2        **A.   Legal Standard**

3        Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with

4    any order of the Court may be grounds for imposition by the Court of any and all sanctions . . .

5    within the inherent power of the Court."  District courts have the inherent power to control their

6    dockets and "[i]n the exercise of that power they may impose sanctions including, where

7    appropriate, . . . dismissal." *Thompson v. Hous. Auth.*, 782 F.2d 829, 831 (9th Cir. 1986).  A

8    court may dismiss an action, with prejudice, based on a party's failure to prosecute an action,

9    failure to obey a court order, or failure to comply with local rules.  *See, e.g.*, *Ghazali v. Moran*, 46

10   F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); *Ferdik v. Bonzelet*,

11   963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring

12   amendment of complaint); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130–33 (9th Cir. 1987)

13   (dismissal for failure to comply with court order).

14       In determining whether to dismiss an action, the Court must consider several factors:

15   (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its

16   docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of

17   cases on their merits; and (5) the availability of less drastic sanctions.  *Henderson v. Duncan*, 779

18   F.2d 1421, 1423 (9th Cir. 1986); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988).

19       **B.   Discussion**

20       Here, Plaintiff's first amended complaint is overdue, and he has failed to comply with the

21   Court's orders.  The Court cannot effectively manage its docket if Plaintiff ceases litigating his

22   case.  Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

23       The third factor, risk of prejudice to defendant, also weighs in favor of dismissal, since a

24   presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action.

25   *Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1976).  The fourth factor usually weighs against

26   dismissal because public policy favors disposition on the merits.  *Pagtalunan v. Galaza*, 291 F.3d

27   639, 643 (9th Cir. 2002).  However, "this factor lends little support to a party whose

28   responsibility it is to move a case toward disposition on the merits but whose conduct impedes

1   progress in that direction," which is the case here.  *In re Phenylpropanolamine (PPA) Products*

2   *Liability Litigation*, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

3         Finally, the Court's warning to a party that failure to obey the court's order will result in

4   dismissal satisfies the "considerations of the alternatives" requirement.  *Ferdik*, 963 F.2d at 1262;

5   *Malone*, 833 at 132–33; *Henderson*, 779 F.2d at 1424.  The Court's August 25, 2022 screening

6   order expressly warned Plaintiff that his failure to file an amended complaint would result in a

7   recommendation of dismissal of this action, with prejudice, for failure to obey a court order and

8   for failure to state a claim.  (ECF No. 5, p. 21.)  In addition, the Court's October 3, 2022 and

9   November 7, 2022 orders granting extensions of time for Plaintiff to file his amended complaint

10   also warned Plaintiff that failure to file a first amended complaint would result in a

11   recommendation of dismissal of this action, with prejudice, for failure to obey a court order and

12   for failure to state a claim.  (ECF Nos. 7, p. 2; 9, p. 3.)  Thus, Plaintiff had adequate warning that

13   dismissal could result from his noncompliance.

14         Additionally, at this stage in the proceedings there is little available to the Court that

15   would constitute a satisfactory lesser sanction while protecting the Court from further

16   unnecessary expenditure of its scarce resources.  Plaintiff is proceeding *in forma pauperis* in this

17   action, making monetary sanctions of little use, and the preclusion of evidence or witnesses is

18   likely to have no effect given that Plaintiff has ceased litigating his case.

19   **IV.**    **Conclusion and Recommendation**

20         Accordingly, the Court HEREBY ORDERS the Clerk of the Court to randomly assign a

21   district judge to this action.

22         Furthermore, the Court finds that dismissal is the appropriate sanction and HEREBY

23   RECOMMENDS that this action be dismissed, with prejudice, for failure to state a claim

24   pursuant to 28 U.S.C. § 1915A, for failure to obey court orders, and for Plaintiff's failure to

25   prosecute this action.

26         These Findings and Recommendation will be submitted to the United States District Judge

27   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen**

28   **(14) days** after being served with these Findings and Recommendation, Plaintiff may file written

objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 10, 2023**                            /s/ *Barbara A. McAuliffe*
                                                          UNITED STATES MAGISTRATE JUDGE

23